UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-81753-CIV-MARRA

ALLIED MINERAL PRODUCTS,
INC., an Ohio corporation,

    Plaintiff,
vs.

OSMI, INC., STELLAR
MATERIALS, INC., and
STELLAR MATERIALS, LLC,

    Defendants.
_____/

## ORDER AND OPINION GRANTING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss [DE 13]. The motion is fully briefed and ripe for review. The Court has carefully considered all relevant filings, heard oral argument of counsel, and is otherwise fully advised in the premises.

Plaintiff, Allied Mineral Products, Inc. ("Allied"), brings this action seeking a Declaratory Judgment of (i) patent non-infringement, (ii) patent invalidity, and (iii) patent unenforceability, relating to Stellar's U.S. Patent No. 7,503,974 (the "'974 Patent"),[1] as well as for tortious interference by Defendants, OSMI, Inc., Stellar Materials, Inc. and Stellar Materials, LLC (collectively "Stellar") with the business

---

[1] Allied and Stellar are competitors in markets for a variety of refractory products used in industrial furnaces. The '974 Patent purports to claim a two-part cementitious material formulation of fused magnesium oxide and an aqueous acid phosphate solution having utility as a phosphate cement binder for aggregate and refractory cementitious material. Compl. ¶ 3.

relationships between Allied and its Mexican distributors.  Complaint ("Compl.") ¶ 1.  Specifically, Allied seeks "a judicial determination that the manufacture, use, sale, offering for sale, importing, or exporting of the Quick-Fire 88 and PyroFast 235 products do not infringe, directly or indirectly, any valid and enforceable claim of the '974 Patent."  Compl. ¶ 30.  Defendants move to dismiss Allied's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and 12(b)(6) for failure to state a claim upon which relief can be granted.

> The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a) (emphasis in original), not that it must do so.  This text has long been understood "to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see also Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, n.17 (1993); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494-496 (1942).  We have found it "more consistent with the statute," however, "to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp."  *Wilton, supra*, at 289.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) ("*MedImmune*") (emphasis in original).

## STANDARD OF REVIEW

A. <u>Subject Matter Jurisdiction</u>

A claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) if a federal court lacks subject matter jurisdiction to hear the claim. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). The plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists, which includes demonstrating an actual controversy at the time the complaint was filed. *See New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *Breckenridge Pharm., Inc. v. Everett Lab., Inc.*, No. 09-80015-CIV, 2009 WL 654214, *4 (S.D. Fla. Mar. 11, 2009) ("*Breckenridge*"), citing *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002). When evaluating a facial attack on a complaint for lack of subject matter jurisdiction, which we have here, the Court takes the allegations contained in the plaintiff's complaint as true and then resolves the question of whether subject matter jurisdiction exists as a matter of law. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir. 1990). The standard for reviewing a facial attack is similar to a 12(b)(6) motion, except that in addition to the pleadings, a court may also consider materials incorporated into the pleadings by reference. *Jackson v. Sleek Audio, LLC,* 13- 80725-CIV, 2014 WL 1018031, at *2 (S.D. Fla. Mar. 17, 2014). To that end, the Court may consider the letters sent by Stellar's Mexican counsel to Ferro Alloys de Mexico S.A. de C.V. ("Ferro"), and to Pyrotek Mexico S. De R.L de C.V. ("Pryrotek"), and Allied's letter to Stellar's Mexican counsel - all of which

were referenced in the Complaint.

B.     **Case or Controversy Requirement**

In order for a federal court to have subject matter jurisdiction to hear an action, there must be an actual case or controversy. U.S. Const. Art. III, § 2, cl. 1. In actions pursuant to the Declaratory Judgment Act, the Supreme Court has held that the dispute before the court must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). The analysis focuses on whether "the factual and legal dimensions of the dispute are well defined," and not on the risk or imminent threat of suit. *See id*. at 128. If the "facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality," then a case or controversy exists for the purposes of the Declaratory Judgment Act. *See id*. at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). A complaint must allege an objectively reasonable basis for believing a current dispute exists in order to bring suit. *See Breckenridge*, 2009 WL 654214, *4 (finding no controversy when complaint did not allege any conduct by defendant indicating an intent to enforce its patent rights).

While the Supreme Court in *MedImmune* supplanted the previous "apprehension of suit"[2] test for declaratory judgment jurisdiction, threats of suit and other communications between the parties do still play a key role in determining whether their interests are sufficiently adverse to permit declaratory relief.  *See Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1244 (10th Cir. 2008) (history of trademark opposition filings, combined with declaratory defendant's express suggestions of prior infringement, were sufficient to confer jurisdiction).  *Some affirmative act on the part of the declaratory judgment defendant is generally necessary in order to define the bounds of the conflict*.  *See Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (emphasis added).  The controversy cannot be "nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."  *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 244 (1952).

---

   [2] Because the parties have relied heavily on many pre-*MedImmune* district court cases, this opinion will discuss and quote from those cases where the former "reasonable apprehension of suit" standard is mentioned.  This frequent mention of the former standard in no way suggests that this Court is applying that standard herein.

## DISCUSSION

Stellar moves to dismiss Counts I, II and III of the Complaint for lack of subject matter jurisdiction asserting that Allied has not alleged sufficient facts to create a case of actual controversy between the parties related to Stellar's U.S. Patent '974. Stellar also urges the Court to dismiss Count IV for several reasons, including that the Court should decline to exercise supplemental jurisdiction after dismissing the federal claims.

In the Complaint, Allied asserts there is an actual controversy between it and Stellar as to the infringement, validity and enforceability of the '974 Patent. Allied alleges an actual controversy results from threats to, and **patent infringement actions initiated against, Allied's distributors in Mexico** relating to products manufactured by Allied in the United States, which products also are sold throughout the United States. Compl. ¶ 12 (emphasis added). Allied does not allege any other action by Stellar, and there is no suggestion that the Mexican distributors are related or sister companies of Allied. The products accused of infringement are sold in Mexico by Ferro and Pyrotek. The products sold by Ferro are marketed under the trademark Quick-Fire 88, and the products sold by Pyrotek are marketed under the trademark PyroFast 235. Compl. ¶ 13.

On June 24, 2015, legal counsel for Stellar sent letters, in Spanish, to Ferro and Pyrotek accusing them of infringing Mexican Patent No. 279757 by reason of their sales of their respective Quick-Fire 88 and PyroFast 235 products. Compl. ¶¶ 13-14

(emphasis added).  Allied obtained a copy of the letter and translated it.  Mexican Patent No. 279757 is Stellar's Mexican equivalent to the '974 Patent, and is based on the specification of the '974 Patent.  Compl. ¶ 15.  On October 27, 2015, Stellar filed patent infringement lawsuits in Mexico against both Ferro and Pyrotek on Mexican Patent No. 279757, alleging the Quick-Fire 88 and PyroFast 235 products infringed claim 16 of Mexican Patent No. 279757.  Compl. ¶¶ 17-18.  Claim 16 of Mexican Patent No. 279757 corresponds directly to claim 16 of the '974 Patent, and is merely a Spanish translation of claim 16 in the '974 Patent.  Compl. ¶ 18.  Allied asserts that given that

(1)    the Quick-Fire 888 and PyroFast 235 products are manufactured in the United States by Allied and shipped to Mexico from the United States, and

(2)    claim 16, the claim asserted by Stellar in Mexico against the products made by Allied in the United States, is merely a Spanish translation of claim 16 in the '974 Patent,

the claims of infringement against Allied's distributors in Mexico are tantamount to an assertion that Allied's activities of manufacturing and selling the accused products in the United States, is a claim of infringement of claim 16 of the '974 Patent in the United States.  Compl. ¶ 19.  Allied maintains that Stellar's actions in Mexico against products manufactured and sold by Allied in the United States, when coupled with the existence of Stellar's ownership of an equivalent patent in the United States, creates a case or controversy over the '974 Patent in the United States.

Stellar responds that Allied has not alleged any affirmative conduct by it (1) directed toward Allied, (2) regarding the '974 Patent, or (3) in the United States. Thus, argues Stellar, Allied has not alleged any "definite" or "concrete" facts that would demonstrate a "real and substantial" controversy sufficient to confer subject matter jurisdiction under the Constitution or the Declaratory Judgment Act. "[T]here is no allegation that the products are *distributed* in the U.S. or that Allied's liberty to distribute the products in the U.S. has been threatened. Further there is also no allegation that anyone has been barred from distributing the products in Mexico . . . although Stellar [has] file[d] a patent infringement suit against Ferro and Pyrotek in Mexico for infringement of Stellar's Mexican Patent 279757." DE 13 at 3 (emphasis in original).

*Allied has not alleged that Stellar threatened Allied with infringement of its Mexican patent or named Allied as a defendant in the Mexican lawsuit. Rather, Allied's Complaint concludes that relevant portions of Stellar's U.S. Patent '947 "correspond directly" to relevant portions of the Mexican Patent and that Stellar's claim of infringement of the Mexican Patent is "tantamount to a claim these same products infringe . . . the '974 Patent*." Compl. ¶¶ 18, 19 (emphasis provided). Stellar responds that Allied merely claims that it *fears* being sued, without a single allegation that it was ever even *threatened* with suit, much less sued on the '974 Patent. Stellar points out that the Complaint contains no allegation that Stellar took *any* affirmative action directed toward Allied, or anyone else, with regard to the U.S.

Patent '947 for which Allied is seeking a declaration.

So the task at hand is to determine whether the facts alleged, under all the circumstances and as a matter of law, show that there is a real and substantial, definite and concrete controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *MedImmune*, 549 U.S. at 127; *Breckenridge*, 2009 WL 654214, *2, citing *Brown v. Toscano*, 254 F.R.D. 690 (S.D. Fla. 2008).

The Court is mindful of the extensive cautionary language of the United States Supreme Court when reviewing the allegations before it.  As mentioned above, the declaratory judgment statute "confers a discretion on the courts rather than an absolute right upon the litigant." *Green v. Mansour*, 474 U.S. 64, 72 (1985) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff*, 344 U.S. 237, 241 (1952)).  In exercising its discretion, a federal court must only pass upon real disputes, not uncertain or hypothetical ones. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969).  Moreover, the controversy cannot be "nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Pub. Serv. Comm'n,* 344 U.S. at 244.  For a declaratory judgment to issue, "there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (internal quotation omitted).  While the Mexican

litigation is a factor to consider, so is the fact that Allied is not being sued in that litigation, and that Allied has not alleged any acts on the part of Stellar that threaten suit.

In support of its argument that there is no actual controversy between the parties, Stellar points to a July 2, 2015 letter from Allied's U.S. based counsel to Stellar's Mexican counsel. In that letter, Allied responds to a letter sent by Stellar to Ferro and Pyrotek requesting that they cease and desist selling the Quick-Fire 88 and PyroFast 235 products. Allied's letter closes with the following statement: "In the event that you continue to do so, be assured that Allied Mineral Products will consider all actions allowed under Mexican law to prevent such baseless activities." *See* DE 13-2. Allied does not allege any further communication with Stellar after the July letter was sent. The conduct alleged in this case is limited to litigation in Mexico over a Mexican patent, and a letter Allied wrote to Stellar, not the other way around. Conspicuously absent from the Complaint are any allegations that Stellar has had any contact with Allied with regard to the '947 Patent. Stellar asserts that Allied cannot base an actual controversy involving a U.S. Patent on Stellar's enforcement of a Mexican patent against different defendants.

Generally, a plaintiff cannot rely on a defendant's enforcement of a patent against different parties to create an actual controversy when there is no threat to enforce the patent against the plaintiff. *See e.g., Avon Products, Inc. v. Moroccanoil, Inc.*, No. 12 CIV. 4507 GBD, 2013 WL 795652, at *5 (S.D.N.Y. Mar. 4,

2013) (rejecting plaintiff's argument that a controversy existed based on related trademark litigation in Canada because it failed to demonstrate that the defendant "intends to take action to enforce its U.S. trademarks against Plaintiff").  In this instance, Allied has alleged only that Stellar is enforcing its Mexican patent in an infringement action in Mexico against two separate entities that act as distributors for Allied in Mexico.  These facts are insufficient to establish "real and substantial" "adverse legal interests" between Allied and Stellar in the United States on Stellar's U.S. Patent.

Allied has also alleged that there is an actual controversy based on Stellar's lawsuit against Ferro and Pyrotek in Mexico for infringement of Stellar's Mexican patent.

In 1989, the Northern District Court of Illinois wrote:

> The courts are divided on whether suit or threat of suit on a corresponding foreign patent is sufficient to satisfy the reasonable apprehension requirement.  For example, in *Dr. Beck & Co. G. M. B. H. v. Gen. Elec. Co.*, 210 F.Supp. 86, 92 (S.D.N.Y. 1962), the court held that the threat of suit for infringement of a United States patent cannot be implied from the actual fact of suit on a corresponding foreign patent.  The court reasoned that, because a "patent is co-extensive with the borders of sovereignty which granted it … infringement thereof cannot be predicated on acts consummated in a foreign country."  *Id*.  *See also Gates Energy Products v. Yuasa Battery Co.*, 599 F.Supp. 368, 374 (D.Colo. 1983) (same).  *But see Electro Medical Systems S.A. v. Cooper Lasersonics, Inc.*, 617 F.Supp. 1036, 1038 (N.D. Ill. 1985) (the existence of prior infringement suits in foreign forums based on corresponding foreign patents and against plaintiff's allegedly infringing products is sufficient to create a reasonable apprehension of identical suits in the United States); *Ethicon, Inc. v. American Cyanamid Co.*, 369 F.Supp. 934, 937 (D.N.J. 1973) (suit on foreign counterpart

>patent sufficient threat).  The better view is that, while Emhart's threat of an infringement suit on its Japanese counterpart patent may not be dispositive of its intention to bring suit in the United States, it is evidence of Emhart's willingness to employ litigation against Hakuto to protect its patent rights.

*Hakuto Co., Ltd. v. Emhart Indus., Inc.*, No. 88 C 3659, 1989 WL 24118, *3  (N.D. Ill. Mar. 13, 1989) ("*Hakuto*").[3]  *See, also, Schutte Bagclosures, Inc. v. Kwik Lok Corp.*, 48 F. Supp. 3d 675, 691 (S.D.N.Y. 2014) (holding that a suit in the Netherlands asserting only European trademark rights as to other products could not form the basis of an actual controversy as to United States trademark rights).

Allied is not a party to the Mexican litigation.  The Mexican litigation does not address the '974 Patent.  All the actions taken by Steller or its counsel alleged in the Complaint occurred in Mexico.  The Complaint contains no allegation that infringement of the '974 Patent has ever been asserted against Allied.  And Allied itself had previously asserted that its response to any Mexican lawsuit would be to ". . . consider all actions allowed under Mexican law to prevent such baseless activities."

In applying the *MedImmune* standard in prior cases, this Court has held that "some affirmative act on the part of the declaratory judgment defendant is generally

---

[3]  In *Hakuto*, Hakuto premised its reasonable apprehension of suit upon two letters sent to it by Emhart threatening suit in Japan.  The district court decided that Emhart's "patent-enforcement-by-letter tactics" was a thinly-veiled threat of suit that provided adequate proof of an actual controversy between the parties.  As discussed *infra*, facts such as these are critically absent from the facts in this case.

necessary in order to define the bounds of the conflict." See *Geltech Sols., Inc. v. Marteal, Ltd.*, 09-CV-81027, 2010 WL 1791423, at *3 (S.D. Fla. May 5, 2010); *Breckenridge Pharm., Inc. v. Everett Lab., Inc.*, No. 09-80015-CIV, 2009 WL 654214, *3 (S.D. Fla. Mar. 11, 2009).  Stellar's decision to enforce its Mexican patent under Mexican law against separate entities cannot, without further affirmative action by Stellar, create an actual controversy with Allied with regard to its U.S. Patent.  The present Complaint is likewise devoid of any allegations that Stellar has done anything to give Allied a reasonable belief that Stellar intends to enforce its '974 Patent in the United States.  The only facts alleged in Allied's Complaint to support Allied's concern are that: (1) Stellar, through its Mexican counsel, sent a cease and desist letter (in Spanish) to two of Allied distributors in Mexico; (2) Stellar filed a patent infringement lawsuit in Mexico against these distributors to enforce Stellar's Mexican patent; and (3) Stellar's Mexican suit is against the very same product Allied manufactures and distributes in the United States.  But Allied has not alleged that Stellar made any contact with it regarding the U.S. Patent or even the Mexican patent.  In fact, there is no allegation in the Complaint of any affirmative act by Stellar toward Allied that could define the bounds of an alleged conflict.  In short, there is no allegation of any affirmative act by Stellar toward anyone with regard to the '974 Patent.

     Important to the totality of the circumstances analysis in the instant case is that which has not occurred.  Generally, the Supreme Court has affirmed declaratory

judgment jurisdiction when the parties take adverse positions with respect to their existing obligations, each side presenting a concrete claim of a specific right.  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937); *see also MedImmune*, 549 U.S. at 128 (concluding that declaratory judgment jurisdiction was proper in the context of a patent licensing agreement when the patentee claimed a right to royalties under the licensing agreement, and the licensee asserted that no royalties were owing because the patent was invalid and not infringed); *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 96 (1993) ("If ... a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction of a complaint....") (emphasis in original).  In contrast, here Stellar has not accused Allied of infringement.  Stellar's lack of any "concrete claim of a specific right" is an important factor weighing against a finding of an actual controversy, particularly given that there has been no alleged actual injury.  Moreover, not only has Stellar not taken a concrete position adverse to Allied's, but it also has taken no affirmative actions at all related to Allied's product in the United States.

Allied asserts that "[i]t is well-settled that allegations of infringement can be inferred from threats to and actions against distributors and customers." DE 19 at 8 of 25.  Allied relies primarily on *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002) ("*Vanguard*") for this proposition where the Federal Circuit concluded that the district court erred in finding no actual controversy between the

parties. However, in that case, Vanguard specifically alleged that PEAT: (1) sought to enjoin Vanguard from production of the Mobile System by filing suit against Vanguard on other grounds, (2) wrote Vanguard a letter indicating that it "no longer ha[d] the right to market PEAT's TDR technology under any name, or to use PEAT ['s] Intellectual Property for the development of future contracts relating to TDR or PEPS technology," and (3) repeatedly contacted the U.S. Army and Congress implying to them that Vanguard was using PEAT's technology without PEAT's permission. *Id*.

The Federal Circuit found that the district court's reliance on "PEAT's repeated statement that it does not intend to sue Vanguard for patent infringement and its ongoing failure to bring such a suit" was misplaced. "The appropriate inquiry asks whether Vanguard had a reasonable apprehension that PEAT would sue it for patent infringement in the future. By filing the earlier lawsuit and informing Vanguard's clients that Vanguard is using the PEAT technology without a license, PEAT has shown a willingness to protect that technology. Filing a lawsuit for patent infringement would be just another logical step in its quest to protect its technology." *Vanguard*, 304 F.3d at 1255 (internal quotations omitted).

*Vanguard* is factually inopposite to the instant case where there are no allegations of an act on Stellar's part against Allied, only threats to, and patent infringement actions initiated against Allied's distributors in Mexico regarding a Mexican patent (albeit a literal translation of Allied's U.S. patent). While this shows Stellar's willingness to protect its technology, Stellar has not made any allegations

against Allied, in stark contrast to the acts taken in *Vanguard*, that would cause Allied a reasonable apprehension that it will be sued in the United States for patent infringement.

Allied also argues that "*[w]hen coupled with other threatening indications, filing foreign lawsuits is deemed to be an implied accusation of infringement in the U.S.*" DE 19 at 13 of 25 (emphasis supplied). For this proposition, Allied relies on *Morphosys AG v. Cambridge Antibody Ltd.*, 62 F. Supp. 2d 100 (D.D.C. 1999) ("*Morphosys*"), a case with facts similar to the facts of this case. In *Morphosys*, the defendant had previously filed suit against the plaintiff in Germany for infringement of its European patents. The patent that was asserted in the foreign litigation was the foreign counterpart of the U.S. patent, just as in this case. The foreign lawsuit was based on a product manufactured by the declaratory judgment plaintiff in the United States, just as in this case. And the declaratory judgment plaintiff was actively selling the same product accused of infringement in the foreign lawsuit in the United States, just as in this case. In *Morphosys*, however, there was evidence that the defendant directly and indirectly threatened the plaintiff and its licensees regarding the impact of its U.S. patent, including communication to one of the plaintiff's licensees stating that the defendant's patent "will affect all parties that are using phage display methods to isolate human antibodies." In view of those additional facts, the court concluded it was not unreasonable for the plaintiff to consider it had received veiled threats. *Id.* at 101-102. The facts in *Morphosys* are,

therefore, distinguishable from this case where there is no allegation that Stellar has made any communication with Allied or Allied's distributors in the United States.

Allied also relies on the 1985 Illinois district court decision of *Electro Medical Systems S.A. v. Cooper Lasersonics, Inc.*, 617 F.Supp. 1036 (N.D. Ill. 1985) ("*Cooper*"). *Cooper* involved foreign litigation over corresponding foreign patents, similar to the present case. *Id*. at 1038. But *Cooper* involved two important facts not present in this case: (1) direct threats of infringement of the U.S. patent by Cooper's exclusive distributor ("exclusive" means it "has the express authority to bring a suit for infringement"), and (2) direct threats of infringement against potential U.S. distributors of Electro Medical Systems's products. *Id*. *Cooper*, therefore, is also clearly distinguishable from the present action.

Allied also discussed *Ethicon, Inc. v. American Cyanamid Comp.*, 369 F.Supp. 934 (D.N.J. 1973), in which the New Jersey district court found that initiation of patent litigation against plaintiff's sister company in Great Britain was sufficient, on its own, to create an actual controversy in the United States. But *Ethicon* involved foreign litigation with a related sister company of the declaratory judgment plaintiff, while the present case involves companies that are entirely independent of the patentee. *Ethicon*, 369 F.Supp. at 938.

Allied also argues that because it has alleged that it manufactures and distributes its product in the United States, *Ethicon* holds that it "may already have violated the United States patent." *Ethicon*, 369 F. Supp. at 938. This assertion is

rejected for two reasons. First, nowhere does Allied allege that its liberty to distribute its products in the United States has ever been threatened, or even questioned by Stellar. Second, the Federal Circuit has held that "absent action by the patentee, 'a potential competitor. . . is legally free to market its product in the face of an adversely-held patent.'" *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008) ("*Prasco*") quoting *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1345 (Fed. Cir. 2007) (holding that foreign litigation is not dispositive of the jurisdiction analysis, but is one factor to be considered). The Federal Circuit again confirmed that jurisdiction will not arise from a plaintiff's perception of possible infringement "without some affirmative act by the patentee." *Prasco*, 537 F.3d at 1338, citing *SanDisk Corp. v. STMicro-electronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007).

The authorities upon which Allied relies do not support the existence of a justiciable controversy. Taking all the facts into account, Allied has not met the threshold burden of proving by a preponderance of the evidence an immediate and real conflict. Having determined that the claims serving as the basis for original federal court jurisdiction do not state an actual case in controversy sufficient to establish subject matter jurisdiction as required by Article III of the Constitution and the Supreme Court, Counts I, II and III of Allied's Complaint must be dismissed.

Because Allied no longer has any live federal claims against Stellar, the remaining potential common law claim will be dismissed because the Court declines

to exercise its supplemental jurisdiction over this claims.  This Court derives its authority to decide Allied's federal claims from 28 U.S.C. § 1331, which provides that district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction ...." Id. § 1367(c)(3).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state or common law claims once the basis for original federal court jurisdiction no longer exists.  *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000); *see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the ... defendants, the district court correctly dismissed its remaining state law claims against these defendants"); *Rice v. Branigar Org., Inc.*, 922 F.2d 788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law claims is discretionary).  Accordingly, the Court concludes that Count IV, "Tortious Interference With Business Relationships," should be dismissed without

prejudice so that Allied may, if it chooses, pursue this claim in state court.[4]

Therefore, in accordance with the conclusions reached herein, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss [DE 13] is granted.  Counts I, II and III are dismissed with prejudice.  Count IV, "Tortious Interference With Business Relationships," is dismissed without prejudice.  Any pending motions are denied as moot.  This case is closed.  In accordance with Fed. R. Civ. P. 58, final judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 24th day of August, 2016.

_____
KENNETH A. MARRA
United States District Judge

---

[4] The Court notes that Allied did not attempt to allege diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Compl. ¶ 8.